UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SARAH TROMBLEY, | |
| Plaintiff, | |
| v. | Civil Action No.: |
| NATIONAL CREDIT SYSTEMS INC., | |
| Defendant. | |

# COMPLAINT

Sarah Trombley, plaintiff, brings this complaint and alleges as follows:

## Nature of the Case

1. This case arises from the power collection agencies like National Credit Systems, Inc., have to wreak havoc on the credit of anyone they claim owes a debt—regardless of whether they can prove that debt—and to abuse those supposed debtors in the process. Here, National Credit Systems, Inc., has been attempting to collect from Sarah Trombley a supposed debt that actually arose out of a billing error by the original creditor. In doing so, it has threatened to contact Trombley's employer and sent her letters containing misrepresentations about the debt and its intentions, all in violation of the Federal Debt Collection

1

Practices Act. Although NCS claimed it would review and act upon information showing that it was wrong about the debt, it has refused to consider the evidence Trombley has sent it to show that the original creditor made a mistake and now has stopped responding to Trombley's letters altogether. Since it has reported the supposed debt to the major credit agencies, Trombley's credit has taken a serious hit, and she has no recourse except this lawsuit.

## Jurisdiction and Venue

2. This is an action brought by a consumer for violations of the Fair Debt Collection Practices Act (15 U.S.C. § 1692 et seq. [hereinafter "FDCPA"]). Therefore, subject matter jurisdiction exists under 28 U.S.C. § 1331.

3. Venue in this District is proper under 28 U.S.C. § 1391, as the district in which a substantial part of the events or omissions giving rise to the claims occurred. Venue is also proper in this District as a judicial district in which the defendant is subject to the court's personal jurisdiction with respect to this action.

## Parties

4. Plaintiff Sarah Trombley ("Trombley") is a natural person and current citizen of Massachusetts.

5. Defendant National Credit Systems, Inc. ("NCS") is a Georgia corporation with a registered address of 2180 Satellite Blvd., Suite 400, Gwinnett, Duluth, GA 30097. NCS is a licensed debt collector in Massachusetts.

## Factual Background

### A. The Stuy Town Lease

6. Trombley was a tenant of Stuyvesant Town ("Stuy Town"), an apartment complex located in the Manhattan borough of New York City, from on or about October 28, 2012 to February 3, 2014. Trombley was scheduled to move into Stuy Town on the day Hurricane Sandy hit New York City, but was forced to delay move-in, as Stuy Town suffered significant damage during Hurricane Sandy. It was forced to close its management office for an extended period, which led to a period of administrative chaos for tenants. For several months, the bills it issued to its tenants reflected inaccurate balances.

7. Stuy Town billed Trombley in excess of the rent due under the lease for November 2012. While Trombley is not certain what led to Stuy Town's billing error, it appears that, perhaps due to the confusion resulting from the extended closing of its office, Stuy Town may have billed her for the maximum legal rent under New York rent regulations, rather than the actual rent specified in the lease.

8. On or about December 2013, Trombley received a job offer with the Commonwealth of Massachusetts which required her to move to the Boston area.

9. Trombley paid the extraordinary full three months' rent Stuy Town required to break her lease (approximately $10,235). However, Trombley explained to a Stuy Town management representative that the additional overcharge of approximately $647 (plus late fees added by Stuy Town) was in error and she would not pay it. The representative told Trombley she would look into the matter.

10. Although Stuy Town had Trombley's email address and phone number and although Trombley had placed a forwarding order on her Stuy Town postal address to ensure that she would receive any mail sent there, Trombley never heard from Stuy Town again.

**B.    NCS Threatens Trombley**

11. On or about October 15, 2014, Trombley got a call from her mother (then aged sixty-five), informing her that someone had left a message with her mother looking for her. When her mother had returned the call at the number the caller left, she learned that the caller was from NCS, a debt collection company.

4

12. Concerned, and believing that she owed no debts, on October 20, 2014, Trombley called NCS. She spoke to a customer representative who identified herself as a Ms. Dee Washington ("Washington"). Washington told Trombley that NCS was collecting on a debt purportedly originally owed to Stuy Town of $1292.79.

13. Although she believed she did not owe any debt to Stuy Town, Trombley wanted to make certain that she did not miss any further communications from NCS. She therefore voluntarily provided Washington with her current full mailing address and phone number.

14. Trombley did not want her mother disturbed any further by NCS. She therefore told Washington that, as NCS had her full contact information, NCS should not contact anyone else concerning the purported debt.

15. In response, Washington threatened to contact Trombley's employer, allegedly to "verify [her] employment."

16. Trombley told Washington that NCS should not contact anyone else concerning her debt, but Washington maintained that NCS had the right to do so.

C.  **NCS Makes Misrepresentations**

17. Trombley disputed the debt and requested that NCS validate the purported debt.

5

18. On October 22, 2014, NCS sent Trombley a letter stating that "[NCS] has been authorized to recover this debt by way of credit bureau reporting (following this initial 30 day validation period) as well as other remedies available under the law. It is our intention to pursue this debt until resolved." However, the letter went on to say, "[p]lease be assured that you may still avoid the aforementioned consequences."

19. NCS then sent a letter dated October 29, 2014, allegedly to validate the debt.

20. This letter stated "Be advised that [NCS] is a third party debt collection agency whose efforts are solely on behalf of other companies who have previouslyvalidated debts."

21. Although NCS claimed that the purported debt was "previously validated," Trombley had never (and has never) communicated with any other collection agency concerning this debt.

22. In that letter, NCS also claimed, "It is very important that you provide our company with all documentation supporting your position...In the event that new information is obtained which places doubt on the validity of this debt, we...will revise or delete the information [we] may have reported to the three major credit bureaus."

23. The letter attached a "Statement of Deposit." This Statement of Deposit included a section identifying a month's worth of "Recurring Charges" under Trombley's second lease. It also included a "Final Account" section which

listed only two charges: "AUTOCHRG@T2/28/2014" of $602.49 and "AUTOCHRG@T1/31/2014" of $690.30, with a total of $1292.79. The Statement of Deposit offered no explanation of the basis of these "autocharges," when they were incurred, or how they were calculated. This is the only explanation of the basis of the purported debt that NCS has ever provided Trombley with.

24. Shortly thereafter, NCS apparently reported the purported debt to the three major credit agencies. As a result of this report, Trombley's credit score with Equifax dropped from above 800 to slightly above 700. The report of the purported debt was the only substantial derogatory information on Trombley's entire credit report.

25. Trombley then attempted to demonstrate to NCS in letters dated November 25, 2012 and December 17, 2012 that she did not owe the purported debt because Stuy Town had billed her in error. She explained about the Sandy-related administrative error. She even sent NCS copies of checks and bank records showing her payments in accordance with the leases for the entire period of the leases. Trombley asked only that NCS withdraw its report to the credit agencies as erroneous.

26. Despite its repeated statements about how it would respond to new information concerning the validity of the debt, NCS has refused to revise or delete its report concerning Trombley to the credit agencies and never answered her last

letter of December 17, 2014. In fact, it has never even *attempted* to respond to the considerable information Trombley has provided concerning the supposed debt, except with the boilerplate statement "Your dispute has been investigated; however, we have yet to find sufficient evidence to validate your claim(s)."

27. To Trombley's knowledge, since receipt of her last letter, NCS has not taken any further steps to resolve this dispute.

28. Therefore, Trombley suffers to this day from a lower credit score, which affects her eligibility for credit and might also be held against her by future employers, landlords, and others. As NCS has essentially ignored her good-faith and significant attempts to demonstrate that she does not owe the purported debt, she is left with no remedy.

## FIRST CLAIM FOR RELIEF

### (Violations of the FDCPA)

29. All paragraphs of this Complaint are expressly adopted as if set forth herein.
30. Trombley is a "consumer" within the meaning of the FDCPA.
31. Trombley is purported to owe a "debt" within the meaning of the FDCPA.
32. NCS is a "debt collector" within the meaning of the FDCPA.

33. NCS has violated the FDCPA in at least the following ways:

    a.    Communicating with third parties in violation of 15 USC 1692c(b).

    b.    Threatening to take any action that cannot legally be taken or which is not intended to be taken in violation of 15 USC 1692e(2)(5).

    c.    Making false, deceptive, or misleading representations in violation of 15 USC 1692e.

34. Trombley has been damaged as a direct result in the ways set forth in this Complaint.

## RELIEF SOUGHT

Wherefore, Trombley seeks an award of statutory damages and costs of the action, including expenses. Trombley also requests all further relief to which she is entitled under federal law, whether of a legal or equitable nature, which the Court deems appropriate.

Respectfully submitted,

DATED: 10/19/15

Cambridge, MA

_____
Sarah Trombley

(setrombley@gmail.com)

16 Forest St. #41

Cambridge, MA 02140